**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNE KOONS, | |
| Plaintiff, | Civil Action No. 18-16723 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| JETSMARTER, INC., et al., | |
| Defendants. | |

### SHIPP, District Judge

This matter comes before the Court upon Defendants JetSmarter, Inc. and Joshua Raia's (collectively "Defendants" or "JetSmarter") Motion to Dismiss and Compel Arbitration. (ECF No. 7.) Plaintiff Anne Koons ("Plaintiff" or "Ms. Koons") opposed (ECF No. 10), and Defendant replied (ECF No. 11).[1] In the alternative, Defendants moved to stay the action pending resolution of the related class arbitration. (ECF No. 7.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss and Compel Arbitration is granted in part and denied in part.

---

[1] The Court has also reviewed Defendants' Notices of Supplemental Authority. (*See* ECF Nos. 13, 14, 16, 17, 18, 20, 21, 24.)

## I. Background

This case arises out of two memberships that Plaintiff purchased from JetSmarter for private air transportation services.[2] (Defs.' Notice of Removal, Ex. 3 ("Complaint"), ECF No. 1-3.) Namely, JetSmarter represented that its membership program provided clients with "regular access to private jets," as well as access to "certain flights at no additional costs." (Compl. ¶ 24.)

In or about December 2017, Plaintiff began communicating with Joshua Raia ("Raia"), a JetSmarter representative, about purchasing JetSmarter's service. (*Id.* ¶¶ 3, 8.) Plaintiff expressed an interest in JetSmarter's service because she frequently flew to South Florida and Los Angeles. (*Id.* ¶ 9.) Plaintiff explained her concerns to JetSmarter "about the availability of flights sponsored by JetSmarter as well as the distance of the airport from which they would be based given the location of her residence in Voorhees, New Jersey." (*Id.* ¶ 10.) JetSmarter and Raia advised Plaintiff that Teterboro Airport regularly had flights to both Florida and Los Angeles, and that she would have access to those flights. (*Id.* ¶ 11.) JetSmarter and Raia further indicated that JetSmarter "intended to establish flights out of Philadelphia International Airport (a location closer to [Plaintiff's] residence)." (*Id.* ¶ 12.) Finally, JetSmarter and Raia informed Plaintiff that, by purchasing a JetSmarter membership, "she would be entitled to fly on flights with a duration of up to three hours at no additional cost." (*Id.* ¶ 13.)

Based on JetSmarter and Raia's representations, Plaintiff purchased a one-year membership from JetSmarter. (*Id.* ¶ 14.) Later, Plaintiff purchased a three-year "Sophisticated"

---

[2] Other plaintiffs have filed similar complaints against JetSmarter in other jurisdictions. (*See* Gushue Decl., ECF No. 7-9.) Additionally, there is a pending class action arbitration against JetSmarter in Fort Lauderdale, Florida. (*Id.*)

2

level membership. (*Id.* ¶ 16.) Section Eighteen of the Membership Agreement,[3] entitled "Dispute Resolution," provided the following:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association by a sole arbitrator under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, which are deemed to be incorporated herein by reference . . . . The place of arbitration shall be Broward County, Florida . . . .

(Defs.' Mot. to Dismiss, Ex. 4 ("Membership Agreement" ¶ 18), ECF No. 7-8.) The Membership Agreement also included a provision entitled, "Governing Law," which provided that the Membership Agreement "and all the rights of the parties hereunder shall be governed by, construed and enforced in accordance with the laws of the State of Florida without reference to the conflict of law principles of any jurisdiction." (*Id.* ¶ 17.)

Plaintiff alleges that JetSmarter unilaterally changed the terms of the contract, by, *inter alia*, eliminating services that were promised to her, such as complimentary helicopter service. (Compl. ¶ 17.) Moreover, Plaintiff contends that "the frequency of scheduled flights based out of Teterboro Airport have greatly decreased and service was never established out of the Philadelphia International Airport." (Pl.'s Opp'n Br. 2 (citing Compl. ¶ 18).) Finally, Plaintiff states that the cost of flights through JetSmarter has substantially increased. (*Id.* (citing Compl. ¶ 19).)

Plaintiff's Complaint raises the following three claims: (1) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("NJCFA"); (2) "Respondeat Superior"; and (3) "Legal Fraud." (Compl. ¶¶ 22-39.) In the instant Motion, Defendants move to dismiss the

---

[3] Although Plaintiff entered into two membership agreements, those agreements both included the subject arbitration provision, and therefore, the Court refers to the relevant agreements jointly as the "Membership Agreement."

3

Complaint and compel arbitration pursuant to the Dispute Resolution Clause of the Membership Agreement.

## II.  Legal Standard

As a threshold matter, the parties dispute whether the Court should review the instant motion to compel arbitration under a Federal Rule of Civil Procedure[4] 12(b)(6) or Rule 56 standard. Plaintiff argues that the Court should review the matter pursuant to the Rule 56 summary judgment standard because "neither the complaint nor the documents referenced therein make clear that Plaintiff is subject to an enforceable arbitration agreement." (Pl.'s Opp'n Br. 5, ECF No. 10.) Defendants oppose, arguing that a Rule 12(b)(6) failure to state a claim standard is more appropriate "given the undisputed fact that Plaintiff entered into an enforceable [click wrap] agreement containing an equally enforceable provision." (Defs.' Reply Br. 2, ECF No. 11.)

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," yet an exception to that rule is that the Court may consider "a document integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted). Here, Plaintiff explicitly relies upon the Membership Agreement in the Complaint, and therefore, the Court may consider that agreement in evaluating Defendants' Motion to Dismiss.

Moreover, in *Guidiotti v. Legal Helpers Debt Resolution, LLC*, the Third Circuit clarified the standard for district courts to apply in determining a motion to compel arbitration. 716 F.3d 764, 772 (3d Cir. 2013). The Third Circuit provided:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's

---

[4] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

> claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. . . . But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.

*Id.* at 776 (internal quotation marks and citations omitted).

Here, it is apparent from the face of the Membership Agreement, which Plaintiff's Complaint explicitly relies upon, that Plaintiff's claims are subject to an enforceable arbitration agreement as set forth in Section 18 of the Membership Agreement. As such, the Court declines to convert Defendants' Motion to Dismiss into a summary judgment motion, and reviews Defendants' motion pursuant to Rule 12(b)(6).

## III. Discussion

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA creates a body of federal substantive law establishing the duty to respect agreements to arbitrate disputes. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 554 F.3d 513, 522 (3d Cir. 2009). The FAA declares that "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Whe[n] there is a contract between the parties that provides for arbitration, there is 'an emphatic federal policy in favor of arbitral dispute resolution.'" *Hoover v. Sears Holding Co.*, No. 16-4520, 2017 WL 2577572, at \*1 (D.N.J. June 14, 2017) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

5

arbitration." *Raynor v. Verizon Wireless, LLC*, No. 15-5914, 2016 WL 1626020, at *2 (D.N.J. Apr. 25, 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

"[I]n deciding whether a party may be compelled to arbitrate under the FAA," the Court must determine: "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quotation marks omitted) (quoting *Certain Underwriters at Lloyd's*, 584 F.3d at 527). Under Section 2 of the FAA, "an arbitration provision is severable from the remainder of the contract"; therefore, only challenges specifically to the validity of the arbitration agreement are relevant to "a court's determination of an arbitration agreement's enforceability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)).

### A. The Arbitration Provision is Valid

Preliminarily, the parties disagree as to whether the Court should apply New Jersey or Florida state law to determine the validity of the arbitration provision. Plaintiff contends that the Court should apply New Jersey law, arguing, "In the instant case, Plaintiff executed the Membership Agreement and paid substantial sums of money based on the false representations made to her by Defendants. All such activity (the execution, the payment and the receipt of the false representations) occurred while Plaintiff was in New Jersey."[5] (Pl.'s Opp'n Br. 9.) Defendants argue that the Court must apply Florida law, pursuant to the Membership Agreement's Governing Law provision. (Defs.' Reply Br. 3.) Further, Defendants aver that "Florida has a

---

[5] New Jersey has adopted the most significant relationship test in deciding choice of law issues. *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 458-59 (N.J. 2007).

6

substantial relationship to the parties and transaction as all communications from JetSmarter were sent from its representatives located in Florida and JetSmarter is headquartered in Florida." (*Id.* at 4.)

In considering motions to compel arbitration, "the Court applies 'ordinary state-law principles that govern the formation of contracts[.]'" *Emcon Assocs. v. Zale Corp.*, No. 16-1985, 2016 WL 7232772, at *3 (D.N.J. Dec. 14, 2016) (quoting *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009)). Typically, "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Id.* (quoting *N. Bergan Rex Transp. v. Trailer Leasing Co.*, 730 A.2d 843, 847 (N.J. 1999)); *see also Prescription Counter v. AmerisourceBergan Corp.*, No. 04-5802, 2007 WL 3511301, at *10 (D.N.J. Nov. 14, 2007) (finding that because the defendant corporation's principal place of business was in Georgia, there was "a reasonable basis for the parties' choice of law").

Here, the Membership Agreement expressly provides that any disputes shall be governed by Florida law, and the Complaint alleges that JetSmarter's principal place of business is in Florida. (Membership Agreement ¶ 18; Compl. ¶ 2.) Additionally, upholding a governing law provision mandating application of Florida Law will not violate New Jersey's public policy because both New Jersey and Florida "favor[] arbitration as a mechanism [for] resolving disputes." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002) ("[O]ur courts have held on numerous occasions that agreements to arbitrate are not violative of public policy"); *see also Rey v. Bonati*, No. 08-806, 2008 WL 11335106, at *1 (M.D. Fla. July 30, 2008) (citation omitted) ("It is well settled under Florida law that arbitration is a favored means of dispute resolution and that courts

7

should indulge every reasonable presumption to uphold these agreements."). The Court, accordingly, finds Florida law applies.[6]

The arbitration provision at issue is valid under Florida law. Plaintiff, via a click wrap agreement, assented to the terms of the Membership Agreement, which included the subject arbitration provision. Florida routinely enforces click wrap agreements.[7] *See, e.g., Salco Distributors, LLC v. iCode, Inc.*, No. 8:05-642, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits . . . [click wrap] agreements are valid and enforceable contracts.").

Moreover, the arbitration provision clearly and unambiguously states that Plaintiff must submit to binding arbitration in the event any issue arises. (Membership Agreement ¶ 18.) The provision also provides that all disputes "shall be resolved **exclusively** by binding arbitration" and a "**sole arbitrator**" shall resolve those disputes. (*Id.* (emphasis added).) Thus, the arbitration

---

[6] Notwithstanding the Court's determination that Florida law applies, the Court is not persuaded by Plaintiff's arguments that the arbitration provision would be invalid under New Jersey law. (Pl.'s Opp'n Br. 9.) Unlike the arbitration clause in *Atalese*, the arbitration provision here expressly provides that all disputes "shall be resolved **exclusively** by binding arbitration . . . ." (Membership Agreement ¶ 18 (emphasis added).) *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315-17 (N.J. 2014). Although the Court acknowledges that the arbitration provision does not explicitly address the differences between arbitration and pursuing relief within a court of competent jurisdiction, the subject arbitration provision's use of the term "exclusive" clearly signifies that the parties can pursue their claims only with binding arbitration, rather than pursuing relief in a court of competent jurisdiction.

[7] New Jersey also enforces click wrap agreements. *See, e.g., Davis v. Dell*, No. 07-630, 2007 WL 4623030, at *2 (D.N.J. Dec. 28, 2007), *aff'd*, No. 07-630, 2008 WL 3843837, at *5 (D.N.J. Aug. 15, 2008) ("Under [] New Jersey . . . law, when a party uses his [or her] computer to click on a button signifying his [or her] acceptance of terms and conditions in connection with an online transaction, [the party] thereby manifests his [or her] assent to an electronic agreement."). The party will be bound by the terms of the click wrap agreement even if the party did not review the terms and conditions of the agreement before assenting to them. *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 665-66 (D.N.J. Jan. 30, 2017) ("[A]" failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation.") (internal quotation marks and citation omitted).

provision is clear and unambiguous, and Plaintiff's waiver of her right to sue in court is apparent on the face of the arbitration provision.[8] *See, e.g., Kaplan v. Kimball Hill Homes Fla., Inc.*, 915 So. 2d 755, 761 (Fla. 2d DCA 2005) ("[A]n agreement to arbitrate necessarily is understood to involve the relinquishment of the rights of access to courts and trial by jury"); *see also Henry v. Pizza Hut of Am., Inc.*, No. 07-1128, 2007 WL 2827722, at *6 (M.D. Fla. Sept. 27, 2007) (internal quotation marks and citation omitted) ("[The] loss of the right to [a] jury trial is a fairly obvious consequence of an agreement to arbitrate.").

Finally, Plaintiff's arguments pertaining to the Membership Agreement's validity as a whole (*see* Pl.'s Opp'n Br. 14), and not the arbitration provision specifically, must be decided by the arbitrator. *See Hoover*, 2017 WL 3923295, at *2 (quoting *Buckeye Check Cashing, Inc.*, 546 U.S. at 446 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator [.]")). The Court, accordingly, finds the subject arbitration provision is valid.

### B.     The Arbitration Provision Delegates Arbitrability

The Court next turns to the issue of arbitrability, *i.e.*, whether the issue falls within the scope of the Membership Agreement. *See, e.g., Berture v. Samsung Elecs. Am., Inc.*, No. 17-5757, 2018 WL 4621586, at *9 (D.N.J. July 18, 2018). "[P]arties can agree to arbitrate gateway

---

[8] Plaintiff also argues that the Court should apply New Jersey state law because her claims fall under the New Jersey Consumer Fraud Act. (Pl.'s Opp'n Br. 7.) The Court emphasizes, however, that it only addresses arguments pertaining to "the validity and enforceability of the arbitration clause," because, "[o]nce such a [valid arbitration] agreement is found, the merits of the controversy are left for disposition to the arbitrator." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999); *Great West. Mort. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997); *see also Emcon Assocs.*, 2016 WL 7232772, at *8-9 (finding that the plaintiff's assertion that the contract's choice of law provision "does not contain language that prevents [the p]laintiff from asserting claims under New Jersey statutory law" was "irrelevant to the [c]ourt's choice of law analysis" and determination regarding the validity of the arbitration provision).

9

questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 68-69. "[W]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). The Court may not decide the issue of arbitrability if a valid arbitration agreement delegates the issue of arbitrability to an arbitrator. *Id.* at 530.

Here, the arbitration provision expressly delegates the issue of arbitrability to an arbitrator; namely, it provides that "**[a]ny claim or dispute** . . . whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, **including the validity of this clause**, shall be resolved exclusively by binding arbitration." (Membership Agreement ¶ 18 (emphasis added).) As such, the Court does not reach the issue of arbitrability, as that is a matter for the arbitrator's review.

The Court, therefore, finds the arbitration provision valid and the scope of that provision an issue for the arbitrator to review. The Court, accordingly, grants Defendants' Motion to Compel Arbitration.

## IV. Stay Pending Arbitration

Finally, the Court notes that Defendants move to both dismiss this action and compel arbitration. Defendants' only argument in support of the Court's dismissing, rather than staying, the matter consists of a single footnote, which provides in its entirety: "While the FAA requires a stay of any action subject to a valid arbitration agreement, this Court has the discretion to dismiss this action if all the issues raised are arbitrable." (Defs.' Moving Br. 10 n. 1 (citing *Hoffman v. Fid. & Deposit Co.*, 734 F. Supp. 192, 195 (D.N.J. 1990).) Defendants' bare assertion fails to persuade the Court that it should dismiss, and not stay, the matter. *See, e.g., Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 710-12 (3d Cir. 2009) (discussing, *inter alia*, Section 3 of the FAA,

10

which "imposes a mandatory stay"). The Court, therefore, denies Defendants' Motion to Dismiss, and stays the matter pending the completion of arbitration pursuant to Section 3 of the FAA.

## V.   Conclusion

For the reasons set forth above, it is hereby ordered that Defendants' Motion to Dismiss and Compel Arbitration is granted in part and denied in part. The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 15, 2019